UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| SHARMAINE LEWIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.  20-4368 |
| | : | |
| NATIONAL BOARD OF OSTEOPATHIC | : | |
| MEDICAL EXAMINERS, INC. | : | |
| | : | |
| Defendant. | : | |

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER**

**I.     PRELIMINARY STATMENT**

Defendant's corporate offices are located in Conshohocken, Pennsylvania, 15 miles from the courthouse. Defendant's employees who are witnesses for this matter are based in the Conshohocken office. Despite being located 15 miles from the courthouse in this matter, Defendant is requesting a transfer of venue to Indiana, where Defendant has no property or employees. Defendant's attempt to transfer venue to a place where it has no offices or no employees and Plaintiff has no connections is a transparent attempt to place Plaintiff at a severe disadvantage in litigating in a forum that she has no connection to and for which she does not have counsel admitted to practice.  Defendant's attempt to transfer venue fails because no enforceable agreement exists between the parties because the purported agreement is unconscionable and illusory. The forum selection clause is unenforceable because it (1) is the result of overreaching by Defendant; (2) violates a strong public policy; and (3) the venue proposed by Defendant is so seriously inconvenient as to be unreasonable.

1

Plaintiff filed her Complaint in this court on September 4, 2020 asserting that Defendant, National Board Of Osteopathic Medical Examiners (NBOME), discriminated against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq. (ADA) for failure to provide appropriate accommodations to Plaintiff, a person with disabilities, on the Comprehensive Osteopathic Medical Licensing Examinations (COMLEX). Plaintiff's complaint seeks injunctive relief, including appropriate testing accommodations in the form of extended time (time and a half or 50% extended time) and a distraction reduced exam setting. No compensatory or exemplary damages are sought.[1]

For the reasons set forth below, this Court must deny Defendant's motion and retain jurisdiction over this matter.

## II.    STATEMENT OF FACTS

Plaintiff is in her final year of medical school at the West Virginia School of Osteopathic Medicine (WVSOM). Defendant is a non-profit corporation organized under the laws of Indiana. However, Defendant does not own or lease any property in Indiana nor does it have any employees there. (Flamini Dep. 51:7-9, 121:3-5)[2] Rather, Defendant maintains its corporate executive offices at 101 West Elm Street, Conshohocken, Pennsylvania, which is approximately 15 miles from the U.S. Courthouse in Philadelphia. Defendant develops and provides for medical students and graduates a three level Comprehensive Osteopathic Medical Licensing Examination (COMLEX) that is accepted

---

[1] Pursuant to 42 U.S.C. §12205 and 28 C.F.R. §36.505, if Plaintiff is the prevailing party, she make request counsel fees.

[2] Deposition of Joseph Flamini (Flamini Dep.) Transcript portions are attached as Exhibit 1.

by state licensing boards in all fifty states. (Flamini Decl ¶ 4-5)[3].   The COMLEX Level 1 (COMLEX 1), COMLEX Level 2 Cognitive Evaluation (COMLEX 2 CE), COMLEX Level 2 Performance Evaluation (COMLEX 2 PE), and COMLEX 3. (Flamini Decl. ¶ 6) The successful completion (i.e. passing grade) is required by state licensing boards for a license to practice osteopathic medicine. (Defendants Answer to Plaintiffs Complaint, Doc. 10)

Successful completion of the COMLEX 1, COMLEX 2 CE and COMLEX 2 PE is required by all United States osteopathic medical schools, in order to graduate and receive a Doctor of Osteopathic Medicine (DO) degree. (Flamini Dep. 26:14-19, 28:16-29:11, 31:10-32:4) Furthermore, completion of the two levels is also required to be considered for a medical residency program. Most medical schools require students take the COMLEX 1 at the end of their second year of medical school prior to beginning their third year clinical rotations. (Flamini Dep. 26:14-19, 28:16 – 29:11, 31:10 – 32:4) The COMLEX 2 CE and COMLEX PE are required to be taken and passed prior graduation. Accordingly, most medical students to do not register to take the COMLEX until mid-way through their second year of medical school.

In order to take the COMLEX, Defendant requires that all medical students intending to take the COMLEX examinations, use their on-line access system to register and pay for each examination, through Defendant's Client Registration System (CRS). (Flamini Decl. ¶ 19) As part of the on-line COMLEX registration process, students are required to review a set of rules, that Defendant refers to as "Terms and Conditions". Through the CRS, students are mandated to click an "Agree to Terms" button, which is

---

[3] The Declaration of Joseph Flamini (Flamini Decl.) is annexed to Defendant's Motion to Transfer.

commonly referred to as a "click-through" process. A copy of the most current version of the "Terms and Conditions" are attached hereto as Exhibit 2.

Students are obligated by Defendant's registration system to click "Agree to Terms". If the student clicks on "Disagree to Terms" the student will be redirected to the view "Terms and Conditions" link. Students have no choice other than to "click-through" the "Agree to Terms" button to be able to register and pay for the chosen COMLEX examination. (Flamini Decl. ¶24, Exhibit B and Flamini Dep. 35:9 – 36:4, 156:21 – 157:16) Accordingly, if the student does not "click through" the "Agree to Term", the student will ultimately be unable complete medical school and graduate without taking the exam. Furthermore, the student will be unable to be considered for a residency position. Likewise, without taking a COMLEX exam, a student will not be eligible for medical licensure in any state. (Flamini Dep.  30:22 – 31:9)

The "Terms and Conditions" are a set of rules which Defendant imposes upon students taking the exam that Defendant says it can change at any time without consent or knowledge. The "Terms and Conditions" are not valid contractual terms. These "Terms and Conditions" impose no obligations or conditions upon Defendant and solely obligate the students. Furthermore, failure to comply with the "Terms and Conditions" as determined by Defendant, can have serious consequences including not scoring an attempted COMLEX exam, voiding a score on an attempted COMLEX exam, assigning a failing score to an attempted COMLEX exam and imposition of damages and counsel fees. (See Exhibit 2- ¶¶ 10-11) Furthermore, the Terms and Conditions, not only impose no duties or obligations on Defendant, but also absolves it of obligations, duties and responsibilities or wrong doing. (See Exhibit 2 - ¶¶6-7) Finally, the Terms and

Conditions are illusory in that under the terms, Defendant may at any time, and without the students' consent, change or modify the terms. (See Exhibit 2 - ¶13)

A student with a disability seeking to request accommodations on any COMLEX exam, must submit a request for accommodations. In order to submit a request for accommodations, Defendant mandates that the student must first register and pay for the exam utilizing the CRS "click through" process. A student may not request accommodations, unless the student has completed the registration process. (Flamini Dep. 23:24 – 24:5, 31:1-3) Furthermore, a student with disabilities seeking accommodations is not required to submit a request for accommodations at the time s/he registers for a COMLEX exam and may even wait a year or longer after registering for a COMLEX before submitting a request for accommodations. (Flamini Dep. 24:17 – 25:10) Accordingly, a student with disabilities must click-through "Agree to Terms" before s/he even knows whether a COMLEX exam will be administered in an accessible manner.

The process for requesting accommodations is separate from the CRS registration process and is a paper process as distinguished from the on-line, click-through CRS process. A student with disabilities seeking accommodations must complete a Request for Test Accommodations Application (Accommodations Application), which is in a Portable Document Form (a/k/a "PDF"), either in one's handwriting or on one's computer.[4] After the Accommodations Application is completed and signed by the student, the student sends the Accommodations Application along with any other

---

[4] A copy of the Accommodations Applications is attached as Exhibit 3 and is also found on Defendant's website at https://www.nbome.org/Content/Exams/COMLEX-USA/COMLEX-USA_Test_Accommodation_Form.pdf. (Last viewed November 18, 2020).

requested documentation (e.g. medical or psychological reports, proof of prior accommodations and school transcripts) to Defendant as either an e-mail attachment or via regular mail directed to the Conshohocken, Pennsylvania office.[5]

The Accommodations Application does not link, which displays the "Terms and Conditions". The Accommodations Application contains a section which merely states the following:

> I acknowledge that I have read and understand the eligibility requirements for test accommodations under ADA and NBOME's instructions to request accommodations. I also acknowledge that I have access to, have read or had the opportunity to read the current COMLEX-USA Bulletin of Information (BOI), including the purpose and description of the COMLEX-USA examination and the NBOME Terms and Conditions set forth in the BOI.

Following this statement, the Accommodations Application contains a fill in box that denotes, "I agree to the NBOME Terms and Conditions set forth in the BOI". (Exhibit 3)

Plaintiff applied for accommodations for the COMLEX 1 and COMLEX 2 CE on multiple occasions. Defendant denied her request each time. Plaintiff through counsel appealed her denials several times and each time the appeals were denied by Defendant's General Counsel who is licensed to practice law only in Pennsylvania. (Flamini Dep. 51:21 – 52:3, 132:16-18)) Defendant's Accommodations Department and General Counsel who denied Plaintiff's requests for accommodations and ensuing appeals are

---

[5] A copy of the Test Accommodations page for Defendant website is annexed as Exhibit 4 and found at https://www.nbome.org/exams-assessments/comlex-usa/comlex-usa-level-1/test-accommodations/ or https://www.nbome.org/exams-assessments/comlex-usa/comlex-usa-level-2-ce/test-accommodations/ (Last viewed November 18, 2020).

based in the Conshohocken, Pennsylvania headquarters. (Flamini Dep. 51:17-23, 129:21 – 132:5)

Plaintiff has no connection with Indiana. Furthermore, she has identified counsel who are licensed in Pennsylvania and admitted in the Eastern District of Pennsylvania. The undersigned are not licensed in Indiana. It would be a significant hardship and expense to litigate this matter in Indiana, when the Defendant and most of its witnesses are located within this District.

## III.   ARGUMENT

### A.   The "Terms and Conditions" of the Bulletin of Information Do Not Constitute a Valid and Enforceable Contract

#### 1.   Defendant Has Failed To Produce Documentation Of The Purported Agreement

Defendant has produced only "enhanced" samples from screenshots that currently exist, of the registration process. This is illustrated by the fact that the screen shot appended to Mr. Flamini's Declaration contains a "Special Note" concerning COVID-19 issues. Inasmuch as COVID-19 was not present during any of the times that Plaintiff registered for the exam, these screen shots are not a sample of Plaintiff's registration. (Flamini Dep. 19:19 – 20:10, 140:15 – 141:12, 146:16 – 147:12) Moreover, Defendant has no documentation, which shows Plaintiff information being entered or that she clicked on the "Agreed to Term" Defendant has failed to preserve such documentation. (Flamini Dep. 149: 10 – 150:12) Defendant has merely described its process. However, click through agreements may be moot unless sufficient evidence of each agreement is well-maintained and for use in any resulting legal proceeding. *See Nager v. Tesla Motors, Inc,* 2019 U.S. Dist. LEXIS 149360 (D.KS September 3, 2019) In *Nager*, the court

declined to enforce Tesla's clickwrap agreement after Tesla was unable to produce individual records of acceptance. Tesla submitted documentation of how purchases are made on its website, including the fact that users must click "I agree" and "Submit" before proceeding. Here, the screenshots produced by Defendant are not actual contemporaneous screenshots as they appeared to any student/applicant during the time Lewis registered. Rather, the screenshot contain markups such as arrows and descriptive comments and summaries of today's registration process to provide clarity and explanation to the court. Students completing the registration process do not have the descriptions or enhancements. The fact that Defendant needed to provide these enhancements on screenshots created for purposes of this litigation suggests that the registration process contains convoluted or unclear language.

Even if it is determine that proof of a contract exists, it is unenforceable due to unconscionability. In order to enforce a forum selection clause, it must first be established that an enforceable contract exists. In this matter the "Terms and Conditions" do not constitute a valid contractual relationship. On the contrary, the "Terms and Conditions" are a product of undue influence, overreaching and is otherwise an unenforceable contract of adhesion.

The first part of the analysis is which state law is applicable to determine the validity of a contract. The home state would entail application of Pennsylvania law and if the choice of law provisions set forth in the "Terms and Conditions" are applicable, then Indiana law applies. Pennsylvania and Indiana law apply the same basic principles to determine whether a valid contract exists.

The "Terms and Conditions" is a contract of adhesion, which is unenforceable because it is unconscionable in several respects. A contract may be declared unenforceable due to unconscionability when there is gross disparity in bargaining power, which leads the party with lesser power to sign the contract unwillingly or while unaware of the terms. *Mayflower Transit, Inc. v. Ann Arbor Warehouse Co., Inc.* 892 F. Supp. 1134, 1140 (SD Ind. 1995) A standardized contract may be unenforceable, when there is a showing that the contract is unconscionable. *Tuttle v. Sallie Mae, Inc.,* 2014 U.S. Dist. LEXIS 16593 (ND Ind. February 11,  2014) "[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortgage Corp.,* 592 Pa. 323, 925 A.2d. 115, 119 (2007); *See also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.,* 38 F.3d 1303, 1312 (3d. Cir. 1994). A contract may be voided for unconscionability if it is procedurally and substantively unconscionable. *Salley,* 925 A.2d 115, 119 (2007); *Tuttle,* 2014 U.S. Dist. LEXIS 16593 *11. Provisions of a contract are unenforceable on the grounds of unconscionability if two elements are met; (1) the contractual terms unreasonably favor the drafter, and (2) there is no meaningful choice for the party accepting the provisions.  The first element concerns substantive unconscionability; whereas the second element refers to procedural unconscionability. *Lucey v. FedEx Ground,* 305 Fed. Appx. 875, 877 (3d. Cir. 2009)(construing an arbitration provision). As will be demonstrated below, the "Terms and Condition" put forth by Defendant are procedurally and substantively unconscionable.

### 2.   The "Terms and Conditions" Are Procedurally Unconscionable

Defendant's formation and presentation of the "Terms and Conditions" were procedurally unconscionable and therefore unenforceable. As noted above, when there is no meaningful choice for the party required to accept the term, such term may be consider procedurally unconscionable. *Lucey,* 305 Fed. Appx. at 877. Accordingly, procedural unconscionability pertains to the process by which the purported agreement is reached. *Harris v. Green Tree Financial Corp.,* 183 F.3d 173, 181 (3d Cir. 1999); *Wolfe v. TBG.,* 2014 U.S. Dist. LEXIS 11039 *11 (E.D. PA January 28, 2014).

### a.   Plaintiff Has No Choice And Is Compelled To Accept the "Terms and Conditions"

In this matter, Plaintiff as well as other medical students have no choice other than to execute the click-through process in order to register to take the COMLEX exams. Defendant has repeatedly asserted that students have no choice other than to click on the "Agree To Terms" of the "Terms and Conditions". (Flamini Decl. ¶24, Exhibt B and Flamini Dep. 35:9 – 36:4, 156:21 – 157:16) Furthermore, the circumstances under which Plaintiff, as well as other medical students are in, renders Defendant's registration transaction, procedurally unconscionable. The successful completion of COMLEX 1 and COMLEX 2 are required for all medical students attending American schools of osteopathic medicine. If Plaintiff and other medical students do not successfully complete the COMLEX 1 and COMLEX 2, they will be prohibited from continuing in medical school, graduating from medical school, consideration for a residency program and for medical licensure in each state. Plaintiff like other medical students must accept any provision that Defendant puts in front of them, even the most onerous and oppressive provisions. If Plaintiff as well as other medical student do not accept Defendant's "Terms

and Conditions" their only choice would be to drop out of medical school and find a new career, which would occur well into the second year of medical school or later when they have already invested significant time and resources into becoming a doctor.Plaintiff is in the unpalatable position of Defendant holding the preverbial gun to her head and being compelled to click "Agree to the Terms" or else give up her dreams of becoming a physician.

### b.  The "Terms and Conditions Are Hidden In Fine Print and Convoluted Language

Furthermore, procedural unconscionability also concerns the form of the purported agreement, which in this matter is unconscionable. An agreement is procedurally unconscionable if the form of the agreement includes fine print and convoluted or unclear language. *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 265 (3d Cir. 2003; *Wolf,* 2014 U.S. Dist. LEXIS 11039 *11.The "Terms and Conditions" in the click through process are a sent of ambiguous policies that appear in fine print in the click-through process.[6] Medical students who have no legal or business training are asked to review the fine print and then agree.

Furthermore, utilization of the click through process may also be considered a procedurally unconscionable process. *See, Berkson v. Gogo, LLC.,* 97 F.Supp. 359 (E.D. NY 2015) (holding that venue in arbitration clauses in internet service providers click wrap were not enforceable against the consumers because the average internet user would not have been informed that the clickwrap was binding). To highlight the problem with

---

[6] See Flamini Declaration. Compare Exhibit A (pp 9-10 of 19) which is a regular sized print of the "Terms and Conditions with Exhibit B (p. 18), which purports to be a screen shot of the "Terms and Conditions" in the click through process.

clickwrap electronic contracts of adhesion, the court referenced comedian John Oliver who asserted, "If Apple put the entire text of *Mein Kampf* in their user agreement, you'd still click agree." *Berkson*, 97 F.Supp. at 381 (citations omitted)  Accordingly, the registration click through process is procedurally unconscionable.

However, inasmuch as this matter involves a denial of test accommodations, the inquiry must also include a determination of whether the Application for Accommodations, which occurs separate from the registration process, renders the "Terms and Conditions" procedurally unconscionable. An individual with disabilities, such as Plaintiff, is required to first register for a COMLEX examination and agree to the "Terms and Condition" Accordingly, an individual with disabilities must agree to the "Terms and Conditions" before the individual knows whether the COMLEX examination is going to be administered in accessible manner.  Furthermore, when the Application for Accommodations is submitted with the supporting documentation it is done on a PDF copy. This does not involve a click through process. The "Terms and Conditions" neither appear on the Application for Accommodations nor is there a link to the "Terms and Conditions" (See Exhibit 2) There is merely a fill in box as noted above, which acknowledges reading BOI and "Terms and Conditions" and agreeing to the "Terms and Conditions". The Application for Accommodations does not highlight or explain any particular provision of the "Terms and Conditions" which applies to a request for accommodations. Specifically, there is no express notice that the forum selection clause is applicable to requests for accommodations. The only specific reference made on this Application for Accommodations form is about the eligibility requirements for test accommodations. Accordingly, the "Terms and Condition" and the forum selection

clause are obscured from the Application for Accommodations, which renders the entire provision procedurally unconscionable.

### 1.  The "Terms and Conditions" Are Substantively Unconscionable

Defendant's "Terms and Conditions" are on their face substantively unconscionable because the terms are unreasonably favorable to Defendant. A contract is substantively unconscionable where it "unreasonably favors the party asserting it." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (quoting *Salley*, 925 A.2d at 119)

On its face, the "Terms and Conditions" are completely one sided to the point of excessive overreaching. Each provision of the "Terms and Conditions" places obligations upon the student. By contrast, there is not a single provision in the "Terms and Conditions" which place any obligation or detriment to Defendant. For instance, the "Terms and Conditions" provide:

Candidates are legally bound by the following "Terms and Conditions:"

1.  **Bulletin of Information (BOI).** The candidate shall comply with all the terms, conditions, procedures, and obligations of a candidate as set forth in this BOI.

The foregoing provision on its face states that only the candidate (i.e. student) is legally bound and that the student shall comply with the BOI. There "Terms and Conditions" make clear there are no obligations or that Defendant is legally bound by the "Terms and Conditions"

The "Terms and Conditions" further provides:

6. **No Warranty; Limitation of Liability.** Except as expressly and unambiguously stated in this BOI, NBOME makes no warranty whatsoever, expressed or implied. Any damage or loss of the candidate, or others claiming for the candidate, caused by NBOME

or any of its employees, officers, directors, or agents is limited to a
refund by NBOME to the candidate of any fee paid by or for the
candidate to NBOME, which refund shall be the sole and exclusive
remedy of the candidate or others for any wrong claimed against
NBOME or its employees, officers, directors, or agents, provided
neither NBOME nor its employees, officers, directors, or agents
shall be liable to the candidate or any other person for any indirect,
consequential, punitive, or unforeseeable damages in any event.

7. **Release for Prior Acts or Omissions.** By purchasing a
COMLEX-USA examination, the candidate thereby
unconditionally releases and discharges NBOME, its employees,
officers, directors and agents (released parties) from any and all
claims, liabilities, damages, or losses whatsoever, known or
unknown, that arise out of or are related to any act or omission,
including any negligent or other wrongful act or omission, of the
released parties or any of them, that occurred prior to the date the
candidate purchased that examination.

The foregoing provisions are egregiously one sided. These provisions essentially require

the student to release Defendant and its employees from any liability (other than the cost

of the exam) for any acts or omissions before any act or omission occurred. Furthermore,

Defendant expressly states that it makes no warranties, which further reflects that it has

no obligation or detriment.

Perhaps the most egregious provisions and clearest sign of overreaching are found

in paragraphs 11 and 12 which provide:

10. **Violation by Candidate**. If the candidate violates any
of his or her obligations to the NBOME, including but not
limited to these Terms and Conditions, NBOME may in its
sole discretion consider such violation to be irregular
Conduct and not score or void the score of the candidate's
examination and assign a "fail" score, and/or impose other
sanctions, as NBOME may determine in its sole discretion,
in addition to all other remedies available to NBOME,
including injunctive relief, monetary damages, costs, and
reasonable attorneys' fees. The candidate also
acknowledges and agrees that NBOME likely will have no
adequate remedy at law and is or shall be entitled to
injunctive and/or other equitable relief, and shall not be

> obligated to post any bond, to prevent or limit violation by the candidate of his or her obligations to NBOME. (Emphasis added)
>
> 11 **Attorneys' Fees, Costs.** NBOME has the right to recover from the candidate all attorneys' fees and costs incurred by NBOME (or others acting on behalf of the NBOME) to enforce the candidate's obligations under the BOI, to recover damages or other losses from the candidate for violation by the candidate of his or her obligations under the BOI, or to defend any claim made by or for the candidate against NBOME or its employees, officers, directors, or agents.

Under these provision, Defendant, in is sole discretion can determine if the student violates an obligation to Defendant. Furthermore, Defendant, in its sole discretion can impose a broad range of sanctions on the student such as not scoring an exam, voiding a score on an exam, assigning a failing grade to an exam and even imposing damages such as counsel fees and cost for what it deems to be violations without any type of due process.

Defendant has in fact pursued such sanctions against students in the past. For example, Ajay Bahl sued Defendant for failing to provide accommodations on the COMLEX PE in the United States District Court for the Eastern District of New York. Defendant filed a motion to transfer to Indiana District Court as they have done in this matter, which the District Court granted. *Bahl v. NYCOM-NYIT,* 2017 U.S. Dist. LEXIS 218038 (E.D. NY March 31, 2017). Thereafter, Defendant filed suit against Mr. Bahl in Indiana state court and obtained a judgement for counsel fees in connection with the New York matter in the amount of $277,718.66.[7] (Judgment is attached as Exhibit 5)

---

[7] While the undersigned have not obtained a copy of NBOME's counsel fees statement, based on the total amount, it is evident that NBOME pursued fees for more than just the motion to transfer venue in the New York action. Indeed, Mr. Flamini testified that counsel charges an hourly rate of $200.00 per hour. [Flamini

Furthermore, the Attorney Fees and Costs provision are unconscionable because it provides for counsel feess and costs only to Defendant. Furthermore, this provision has no provision for fees and cost, if the student is the prevailing party in such litigation. This language contradicts the fee shifting provision in federal civil rights statutes that authorizes plaintiff to recover attorney's fees and costs as prevailing party in an effort to ensure that federal rights are adequately enforced, and impermissibly alters the substantive law of the ADA by forcing Plaintiff to assume the risk of paying for their opponents attorney fees in the event the plaintiff is not the prevailing party.

Federal civil rights statutes have a fee-shifting provision that authorizes plaintiff's to recover attorneys' fees and costs as prevailing parties. *See e.g. Young v. New Process Steel, LP,* 419 F.3d 1201, 1205 (11th Cir. 2005) (*citing Christianburg Garment Co. v. EEOC.*, 434 U.S. 412, 417(1976). Pursuant to 42 U.S.C. §12205 and 28 C.F.R. §36.505, a plaintiff as a prevailing party may recover attorney's fees, litigation expenses and costs in a Title III ADA action. However, when a defendant is the prevailing party in a civil rights claim, attorney fees are permissible only if the plaintiff's claim was frivolous, unreasonable or groundless, or if plaintiff continues to litigate after her claims clearly became so. *Young,* at 1205-1206.

Congress explicitly authorized fee-shifting provisions to attract competent counsel to prosecute federal civil rights claims "in order to ensure that federal rights are adequately enforced. *Purdue v. Kenny A.,* 559 U.S. 542, 550 (2010) Congress enacted

---

Dep. 85:4-17] At that rate, counsel billed approximately 1,388 hours. Even if counsel billed at a rate between $650.00 - $700.00 an hour, he would have billed approximately 395 - 425 hours. Clearly, the Indiana judgment associated with the New York action was for time other than its motion to transfer venue.

these provisions recognizing the plaintiffs often lack the resouces to vindicate their civil rights. *City of Riverside v. Rivera,* 477 U.S. 561, 576-578 (1986).

A provision requiring both parties to pay their own expenses, including attorneys' fees, is generally unconscionable because limitations on attorney fees conflict with federal statutes that permit fee shifting. *Quilloin*, 673 F.3d 221, 230-231 (3d Cir. 2012). The foregoing Attorney fees provision of the "Terms and Conditions" may not only prohibit such fees; it may also allow Defendant to recover fees, if it is the prevailing party. At a minimum the foregoing provision is ambiguous as to whether plaintiff may recover fees under the ADA. Such a result alters the remedies provided under the ADA and is therefore substantively unconscionable.

### 3.   The "Terms and Conditions" Are Illusory And Unenforceable

A purported contract, which gives one party the unilateral right to modify or amend the terms and conditions are "illusory agreements" which render the contract void and unenforceable. "If the promise is entirely optional with the promisor, it is illusory, lacks consideration, and is unenforceable." *Lackner v Glosser*, 2006 Pa. Super. 14, 892 A.2d. 21, 31 (Pa. Super 2006) (citing *Geisinger Clinic v. Di Cuccio,* 414 Pa. Super 85, 606 A.2d. 509, 512 (Pa. Super. 1992) *appeal denied,* 536 Pa. 625, 637 A.2d 285 (1993). Moreover, "an illusory promise, one which 'by its terms makes performance entirely optional with the promisor,' cannot form the basis for a valid contract. *Penn v. Ryan's Family Steak Houses,* 269 F.3d 753, 759 (7th Cir. 2001) *quoting Pardieck v. Pardieck*, 676 N.E.2d 359, 364 n. 3 (Ind. Ct. App. 1997) *see also Rumble v. Convergys,* 2010 U.S. Dist. 21190 (S.D. Ohio March 9, 2010) (holding that because the grantor retained

unrestrained discretion to amend, cancel and alter the effect of an incentive plan, such

discretion rendered the plan illusory and unenforceable).

The illusory provision of the "Terms and Condition" provide as follows:

> 13. Amendments. NBOME may in its sole discretion, at
> any time, without the consent of any candidate, amend the
> terms, conditions, procedures, and/or obligations of
> candidates set forth in the BOI, by publishing the
> amendment on the NBOME website, www.nbome.org;
> provided any amendment shall not alter the candidate's
> obligations relating to any COMLEX-USA examination
> taken by the candidate prior to publication of the
> amendment on NBOME's website.

Inasmuch as Defendant may, in its sole discretion, at any time amend the terms and

conditions, the "Terms and Condition" are illusory and unenforceable.

**B.     The Forum Selection Clause Is Not Enforceable**

Assuming arguendo that the court concludes that the "Terms and Conditions"

constitute a valid contract, the forum selection clause is not enforceable in this matter.

The enforceability of a forum selection clause is a procedural issue, rather than a

substantive matter. Accordingly applying federal law to questions of enforceability of a

forum selection clause is consistent with the law in the Third Circuit. *Collins v MaryKay,*

*Inc.*, 874 F.3d 176, 181 (3d Cir. 2017)

The forum selection clause is not enforceable because it, as noted above, entails

overreaching by defendant, is contrary to public policy and under the circumstances  is

inconvenient. When determining whether a forum selection clause is valid and

enforceable the party objecting to the enforcement must show: "(1) that it is the result of

fraud or overreaching, (2) that enforcement would violate a strong public policy of the

forum, or (3) that enforcement would in the particular circumstances of the case result in

litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Sherlock v. Lifestyle Hearing Corp, (USA), Inc.,* 2019 U.S. Dist. LEXIS 176789 (E.D. Pa October 10, 2019) *quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir. 1983).

As noted above, the "Terms and Conditions" and the registration process are a product of overreaching. Plaintiff as well as other osteopathic medical students have to take the COMLEX in order to continue through medical school and graduate, qualify for a residency program and ultimately obtain licensure. Plaintiff as well as other osteopathic medical student must agree to any provisions in order to take the COMLEX exams. Defendant has taken advantage of this situation over medical students, who are required to successfully take the COMLEX exams, by inserting onerous provisions, with no choice other than to accept "Terms and Conditions". Furthermore, application of the forum selection clause to individuals with disabilities seeking accommodations on the COMLEX exams adds additional layer of overreaching. As noted above, the Application for Accommodations occurs separately from the COMLEX registration process. The Application for Accommodations neither contains a specific reference to the forum selection clause nor is there a link to the forum selection clause. Forum selection clauses are unreasonably oppressive to students and are not utilized by testing entities other than Defendant.[8]

---

[8] The undersigned counsel has represented several hundreds of individuals over the past fifteen years involving the several major testing entities. The undersigned counsel has filed several law suits against the National Board of Medical Examiners, the medical licensing test provider for allopathic medical student; the American Association of Medical Colleges, the Law School Admission Council and ACT, Inc. Said law suits have been filed in several jurisdictions including Texas, Ohio, New Jersey, Connecticut, New York and Minnesota. These and other testing entities have no forum selection clause that it imposes upon students. See Declaration of Charles Weiner attached as Exhibit 8.

Furthermore, there is a strong public policy in this forum to enforce the ADA and ensure entities, which do business in this forum comply with the ADA. In *Ramsay v. National Bd. of Medical Examiners,* 968 F.3d 251 (3d Cir. 2020), the Third Circuit affirmed an order from the Eastern District of Pennsylvania granting a preliminary injunction and ordering accommodated testing to a medical student with disabilities who was denied accommodations by the National Board of Medical Examiners (NBME). Defendant has its executive offices in Conshohocken, Pennsylvania. The department, which processes and issues decisions concerning accommodated testing is located in Conshohocken. Moreover, Defendant's General Counsel, who issued several denial letters in this matter is located in Conshohocken and is only licensed to practice law in Pennsylvania. Defendant has chosen to avail itself and take advantage of the benefits and privileges of being in the Eastern District of Pennsylvania.[9] By contrast, Defendant has no property and no employees in Indiana. The only association that Indiana has to this matter is that Defendant is organized under the laws of Indiana. Courts have declined to "adopt the rule that give forum selection clauses dispositive effect where the civil rights laws are concerned, observing that a strong federal public policy favoring enforcement of the civil rights laws requires courts to invalidate a forum selection clause where enforcement would frustrate  that purpose." *Martinez v. Bloomberg LP,* 740 F.3d 211, 218 (2d Cir. 2014) *quoting Red Bull Assocs. v. Best Western Int'l, Inc.,* 863 F.2d 963, 967

---

[9] For example, several testing entities similar to Defendant are in close proximity including the NBME (Philadelphia) www.nbme.org, Educational Commission for Foreign Medical Graduates (Philadelphia) www.ecfmg.org, The American Board of Allergy and Immunology (Philadelphia) www.abai.org, The American Board of Internal Medicine (Philadelphia) www.abim.org, The American Board of Ophthalmology (Doylestown, PA) www.abop.org, The American Board of Plastic Surgery (Philadelphia) www.abplasticsurgery.org, and The American Board of Surgery (Philadelphia) www.absurgery.org. NBOME's close proximity to such organization perhaps allows for a sharing of information and a larger experienced pool of potential employees.

(2d Cir. 1988) Here there is a stong public policy of ensuring that organization situated

withing this district comply with ADA and this district's decisional law.

Finally, litigating this matter in Indiana is seriously inconvenient and is

unreasonable under the circumstances. This case does not involve any issue of damages.

The sole remedy is injunctive relief, most notably provisions for extended time on the

COMLEX 2 CE and a distraction reduced test setting. Plaintiff chose to file this matter in

the Eastern District of Pennsylvania because it is only 15 miles from Defendant's

corporate offices. Plaintiff may need to call as witnesses at the hearing/trial in this matter

who may include Defendant's employees in the accommodated testing department and its

General Counsel and any other employees involved with the policies and procedures

concerning test accommodations. Plaintiff would need to also arrange for transportation

and lodging of her expert(s) and counsel. This creates a considerable inconvenience to

Defendant's employees and a disruption to their business. It also creates problem with

respect to time and availability of witnesses. Furthermore, Plaintiff is a medical student

who undoubtedly, like most medical students, has incurred over $250,000 of debt

(Flamini dep. 63:3-6) By contrast, if this matter were to remain in the Eastern District of

Pennsylvania, there would be little or no problems with the availability of witnesses

particularly on short notice and litigation costs would be substantially reduced.

Defendant has suggested that it desires to have this matter handled in Indiana to

have a common body of legal precedent in Indiana. (Defendant's Memorandum at p. 17)

This argument is disingenuous. In *Bibber v. National Board of Osteopathic Medicine,*

2016 U.S. Dist. LEXIS 48181 (E.D. Pa April 11, 2016), the complaint, which involved a

denial of test accommodations, was instituted in the Eastern District of Pennsylvania.

Defendant did not file a motion to transfer venue and consented to the jurisdiction of this court. Similarly in *Stanley A. Stein v. National Board of Osteopathic Medical Examiners,* No. 16-4119, U.S.D.C E.D. PA, NBOME filed a Notice of Removal from the Court of Common Pleas of Delaware County, Pennsylvania to this court.[10] Defendant has concented to the jurisdiction of this court previously and has removed a case to be in this court; however, it now seeks to remove this matter and avoid the jurisdiction of this court.

Furthermore, there are simply very few cases filed against Defendant involving accommodated testing. Research discloses only two other cases (*Bahl and Bibber)* involving accommodated testing that have been filed against the NBOME in the past six years. The forum selection clause and other provisions of the "Terms and Conditions" may have a chilling effect on individuals seeking to pursue the legal remedies who have been unlawfully denied accommodations.

Defendant also asserts that in *Bahl v. NYCOM-NYIT,* 2017 U.S. Dist. LEXIS 218038 (E.D. NY March 31, 2017) the New York Court ordered that the claims against NBOME be transferred to the Southern District of Indiana. The *Bahl* matter is distinguishable in several respects to this matter. The *Bahl* matter was filed in the Eastern District of New York. *Bahl* involved accommodations for the COMLEX 2 PE. (Flamini Dep. 68:2-15) At that time the COMLEX 2 PE was only administered in Conshohocken, Pennsylvania and not New York (See Declaration of Joseph Flamini filed in *Bahl* ¶10 attached as Exhibit 7) This matter is filed in the Eastern District of Pennsylvania where Defendant has its offices. Furthermore, it does not appear that Plaintiff presented the

---

[10] A copy of the Notice of Removal is attached as Exhibit 6.

range of arguments present in this matter. Rather Plaintiff in *Bahl* appears to have focused on the validity of a the clickthrough agreement and the inconvenience to plaintiff. *See Bahl, 2017 U.S. Dist. LEXIS 218038.*

## IV.    CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order denying Defendant's Motion to Transfer and retain jurisdiction over this matter.

Respectfully submitted

Dated: November 20, 2020                    _____/s/_____

Charles Weiner, Esquire (ID No. 52926)
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel:  (267) 685-6311
 Fax:  (215) 604-1507
charles@charlesweinerlaw.com

_____/s/_____

Mary C. Vargas, Esquire (ID. No. 324005)
STEIN & VARGAS LLP
10 G Street NE, Suite 600
Washington, D.C. 20002
(240) 793-3185
Mary.Vargas@steinvargas.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER was electronically filed on November 20, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Defendant.

_____/S/ Charles Weiner_____